IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

REGINA LUNSFORD POTTER                                                                                     PLAINTIFF

v.                                          NO. 4:10CV01120 HDY

MICHAEL J. ASTRUE,                                                                                         DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. Plaintiff Regina Lunsford Potter ("Potter") began her attempt to obtain benefits by filing applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). Her applications were denied initially and upon reconsideration. She then requested, and received, a de novo hearing before an Administrative Law Judge ("ALJ"). A decision partially adverse to Potter was eventually issued by the ALJ, and Potter appealed that portion of the decision to the Appeal Council. The adverse portion of the ALJ's decision was affirmed by the Appeals Council and became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Potter then commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the adverse portion of the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. It requires the Court to consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. See Heino v. Astrue, 578 F.3d 873 (8th Cir. 2009).

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, the ALJ found that Potter has not engaged in substantial gainful activity since April 16, 2009. At step two, the ALJ found that Potter has the following severe impairments: "(1) degenerative joint disease of the right knee and left shoulder; (2) degenerative disc disease of the lumbar spine; (3) dysthmic disorder; (4) polysubstance abuse in remission; (5) dependent personality disorder; and (6) fibromyalgia …" See Transcript at 12. At step three, the ALJ found that Potter does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The ALJ then assessed Potter's residual functional capacity and found it to be as follows:

> … the claimant can occasionally lift no more than 10 pounds at a time with less than 10 pounds frequently. She can stand and/or walk 2 hours of an 8-hour workday and sit 6 hours of an 8-hour workday with the option to sit and/or stand at will. She can push and pull as much as she can lift and carry. She cannot reach overhead with her left arm but otherwise she can occasionally reach. Secondary to some nonexertional limitations, the claimant can understand, remember, and carryout simple job instructions; make judgments in simple work related situations; and respond appropriately to co-workers and supervisors with only incidental contact. She can respond appropriately to minor changes in usual work routines, but she cannot deal with the general public.

<u>See</u> Transcript at 16. On the basis of the foregoing findings, the ALJ found that Potter retains the residual functional capacity to perform "less than the full range of sedentary work …" <u>See</u> Transcript at 16. At step four, the ALJ found that Potter cannot perform her past relevant work as an assistant manager of a hotel, a cotton gin operator, a meat packer, or a lab assistant. At step five, the ALJ made a series of findings that resulted in Potter receiving some of the benefits she sought; the findings are as follows:

> "The claimant was 43 years old on the alleged onset date of disability. This is defined in the regulations as a younger individual. On April 16, 2009, the claimant attained 49 ½ years of age and her age category changed to an individual closely approaching advanced age …"

> "The claimant has at least a high school education …"

> "Prior to April 16, 2009, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills. Beginning on April 16, 2009, the claimant has not been able to transfer any job skills to other occupations …"

> "Prior to April 16, 2009, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed …"

"Beginning on April 16, 2009, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform …"

"The claimant was not disabled prior to April 16, 2009, but became disabled on that date and has continued to be disabled through the date of this decision …"

"The claimant's disability began on April 16, 2009, and she is entitled to Title XVI benefits only. She was not insured for Title II benefits due to the fact her insured status expired on December 31, 2008."

See Transcript at 20-21.

POTTER'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Potter thinks not and maintains the case should be remanded for two primary reasons:

(1) It should be remanded pursuant to "sentence four" of 42 U.S.C. 405(g) because the ALJ failed to provide "reasoned conclusions, based in the medical evidence, for his assessment of [Potter's residual functional capacity] and the presentation of an appropriate hypothetical question to the [vocational expert]." See Document 12 at 9.

(2) It should be remanded pursuant to "sentence six" of 42 U.S.C. 405(g) because the ALJ and the Appeal Council failed to consider "new and material evidence directly related to the diagnosis and onset of … Potter's back pain." See Document 12 at 12.

ANALYSIS. Potter maintains that this case should be remanded pursuant to "sentence four" of 42 U.S.C. 405(g). She so maintains because the ALJ failed to provide "reasoned conclusions, based in the medical evidence, for his assessment of [Potter's residual functional capacity] and the presentation of an appropriate hypothetical question to the [vocational expert]." See Document 12 at 9.

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses the claimant's ability to function in the workplace." See Id. at 539 [internal quotation omitted].

The record reflects that Potter was seen by Dr. Joanne Gregory ("Gregory"), Potter's treating physician, on several occasions between April of 2008 and March of 2009. See Transcript at 323-332. On March 9, 2009, Gregory completed a medical source statement of Potter's ability to perform work-related physical activities. See Transcript at 333-336. Gregory's findings included the following: (1) Potter can stand and/or walk less than two hours during an eight hour workday; (2) she can sit for a total of two hours, with normal breaks, during an eight hour workday; (3) she is limited in her upper and lower extremities; and (4) her ability to perform manipulative functions such as handling and fingering was limited to an occasional basis. See Transcript at 333-334. With regard to the medical and/or clinical findings to support the foregoing findings, Gregory represented the following:

> Patient has peripheral neuropathy with persistent pain in upper and lower extremities; also has been diagnosed with fibromyalgia and has recurrent pain with this. Also [degenerative] disc disease in lumbar [and cervical] spine. Patient on pain [medication] and muscle relaxer along with neurontin, all of which can make an individual somnolent, dizzy, or impair judgment.

See Transcript at 334.

The ALJ considered the medical source statement but eventually chose to discount the findings made by Gregory. He did so primarily for two reasons. First, the ALJ found that Gregory's findings were not supported by the medical evidence, specifically finding that there was nothing in the record about "any limitations in handling and fingering, except [Potter's] issues with her left shoulder in terms of reaching," and there was no "objective evidence of peripheral neuropathy." See Transcript at 16. Second, the ALJ found that Gregory's findings were contrary to other evidence in the record, including the findings of a consultative physician and the state agency consultant. See Transcript at 16-17.

A treating physician's findings are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with the other substantial evidence in [the] record." See Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) [internal quotation omitted]. The findings of a treating physician may be discounted or even disregarded if other medical assessments are supported by better or more thorough medical evidence or if the treating physician renders inconsistent opinions that undermine the credibility of his findings. See Id.

The record before the ALJ supports his decision to discount Gregory's findings as to Potter's ability to perform the manipulative functions of handling and fingering and her peripheral neuropathy, an impairment the Court understands to involve damage to nerves that results in, inter alia, a burning sensation, pain, and tingling or numbness. The Court can find no evidence in the record before the ALJ to support Gregory's findings as to Potter's limitation in performing the aforementioned manipulative functions or her peripheral neuropathy.

The record before the ALJ, though, is not the same record that was before the Appeal Council and is now before the Court. During the appeal of the ALJ's August 24, 2009, decision, Potter submitted the results of a January 8, 2010, MRI to the Appeals Council. In an April 21, 2010, letter, Gregory opined the following regarding the results:

> This letter is in reference to the recent findings of the MRI of January 8, 2010, with the findings of a Tarlov cyst. This Tarlov cyst had not been seen prior in studies with CT's and plain film x-rays. These are often missed with CT and plain film x-rays. It usually is in an area that compresses the nerve root or encapsulates the nerve root, causing severe nerve compression symptoms, such as shooting and burning pain to a more severe degree than her plain film x-rays or CT would show. This certainly explains all the symptoms she was having since 2006, with the severe lower back pain in it's severity, when compared to the CT scan findings. It is my opinion that the [Tarlov] cyst has probably been present since 2006 or 2007 when her severe symptoms started.

See Document 12, Exhibit A at 4. Potter has now submitted the results to the Court as an exhibit to her brief. The question for the Court is whether the results warrant remanding this case.

The Appeals Council is obligated to consider evidence submitted with a request for review if the evidence is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." See Bergmann v. Apfel, 207 F.3d1065, 1069 (8th Cir. 2000) [internal quotation omitted]. To be "new," the evidence "must be more than merely cumulative of other evidence in the record." See Id. To be "material," the evidence "must be relevant to [the] claimant's condition for the time period for which benefits were denied" and "must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition." See Id. at 1069-1070.

The Commissioner acknowledges that the results of the MRI "relate to the time period [for] which benefits were denied." See Document 13 at 11. On the question of whether the results are "new," his position is not a model of clarity. It appears that he simply has no position on that question. On the question of whether the results are "material," his position is quite clear; he maintains that they are not "material," that is, he maintains that the results "would not have changed the ALJ's decision had the ALJ had the [results] before him." See Document 13 at 11.

Potter's attorney sent the results of the MRI to the Appeal Council by certified mail on April 29, 2010. See Document 12, Exhibit A at 5. The results were preliminarily received on May 5, 2010, and were received by the Office of Disability Adjudication and Review on May 12, 2010. See Id. On June 21, 2010, the Appeals Council affirmed the decision of the ALJ. See Transcript at 1. Sadly, the results were not made a part of the administrative record now before the Court.

Did the Appeals Council actually consider the results of the MRI in affirming the ALJ's decision? The Court cannot say for certain because the administrative record does not contain the results. Moreover, there is no mention of the results in the Appeals Council's notice of action. See Transcript at 1-3. Although it is tempting to simply presume that the Appeal Council considered the results in affirming the ALJ's decision as they were received prior to the notice of action affirming the decision, the Court will resist that temptation and instead explore whether the results are "new" and "material."

Having reviewed the record, the Court finds that the results of the MRI are clearly "new." They introduce evidence into the record of a Tarlov cyst, a growth not previously known to any physician, treating or otherwise, and believed by Gregory to be "present since 2006 or 2007." See Document 12, Exhibit A at 4.

Are the results of the MRI "material?" The Court is not prepared to embrace the Commissioner's assertion that they would not have changed the ALJ's decision. Although it will not be clear until the record is fully developed, the results appear to provide a plausible basis for Gregory's findings. Specifically, the results suggest a basis for Gregory's finding of at least peripheral neuropathy and call into question the ALJ's finding that Potter retains the residual functional capacity to sit for six hours of an eight hour workday.[1]

The Court also finds that good cause exists for Potter's failure to present the

---

[1] The results do not appear to suggest a basis for Gregory's finding of a limitation in Potter's ability to handle and finger.

results of the MRI prior to the administrative hearing. See Buckner v. Apfel, 213 1006 (8th Cir. 2000) (claimant must show, in part, good cause for not presenting new and material evidence during administrative proceeding). The Court accepts Gregory's explanation for why the Tarlov cyst was not seen sooner. See Document 12, Exhibit A at 4.

For the foregoing reasons, the Court finds that the results of the MRI are "new" and "material." The Court also finds that good cause exists for Potter's failure to present the results prior to the administrative hearing. The results should be considered by the ALJ as they may impact his view of Gregory's findings and his assessment of Potter's residual functional capacity.

CONCLUSION. The Court takes no position on the correctness of the ALJ's decision. Instead, the case is remanded so that the ALJ can consider the results of the January 8, 2010, MRI. The ALJ shall consider the results in evaluating Gregory's findings and, in turn, assessing Potter's residual functional capacity. In addition, the ALJ shall clarify the confusion surrounding the granting of Potter's oral motion to amend the onset date.[2]

The final decision is reversed, and this case is remanded. This remand is a "sentence six" remand as that phrase is defined in 42 U.S.C. 405(g).

IT IS SO ORDERED this ___24___ day of May, 2011.

---

[2] Potter initially alleged an onset date of November 1, 2002. At the outset of the administrative hearing, Potter's attorney asked to amend the onset date to May 23, 2006. See Transcript at 29-30. The ALJ granted the oral motion and explained to Potter the significance of doing so. See Transcript at 30. In his written findings and conclusions, though, the ALJ found the following: "[Potter] alleges her disability began on November 1, 2002 ..." See Transcript at 12.

results of the MRI prior to the administrative hearing. See Buckner v. Apfel, 213 1006 (8th Cir. 2000) (claimant must show, in part, good cause for not presenting new and material evidence during administrative proceeding). The Court accepts Gregory's explanation for why the Tarlov cyst was not seen sooner. See Document 12, Exhibit A at 4.

For the foregoing reasons, the Court finds that the results of the MRI are "new" and "material." The Court also finds that good cause exists for Potter's failure to present the results prior to the administrative hearing. The results should be considered by the ALJ as they may impact his view of Gregory's findings and his assessment of Potter's residual functional capacity.

CONCLUSION. The Court takes no position on the correctness of the ALJ's decision. Instead, the case is remanded so that the ALJ can consider the results of the January 8, 2010, MRI. The ALJ shall consider the results in evaluating Gregory's findings and, in turn, assessing Potter's residual functional capacity. In addition, the ALJ shall clarify the confusion surrounding the granting of Potter's oral motion to amend the onset date.[2]

The final decision is reversed, and this case is remanded. This remand is a "sentence six" remand as that phrase is defined in 42 U.S.C. 405(g).

IT IS SO ORDERED this ___24___ day of May, 2011.

---

[2] Potter initially alleged an onset date of November 1, 2002. At the outset of the administrative hearing, Potter's attorney asked to amend the onset date to May 23, 2006. See Transcript at 29-30. The ALJ granted the oral motion and explained to Potter the significance of doing so. See Transcript at 30. In his written findings and conclusions, though, the ALJ found the following: "[Potter] alleges her disability began on November 1, 2002 ..." See Transcript at 12.

_____
UNITED STATES MAGISTRATE JUDGE