# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

REGINA LUNSFORD POTTER                                                    PLAINTIFF

v.                                          NO. 4:10-cv-01120 JJV

CAROLYN W. COLVIN, Acting Commissioner                        DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

In January 2007, plaintiff Regina Lunsford Potter ("Potter") filed applications for disability insurance benefits and supplemental security income payments pursuant to the provisions of the Social Security Act ("Act"). She alleged in the applications that she became disabled for purposes of the Act on November 1, 2002. In August 2009, Administrative Law Judge ("ALJ") David Knowles ("Knowles") issued a decision partially favorable to Potter. He found that she was disabled for purposes of the Act beginning on April 16, 2009. He found, though, that she was only entitled to supplemental security income payments and not disability insurance benefits because her insured status for disability insurance benefits expired before April 16, 2009. Potter appealed ALJ Knowles' decision. The Appeals Council denied her request for review, and his decision became the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner").

Potter challenged the Commissioner's final decision by filing the complaint at bar pursuant to 42 U.S.C. 405(g). Potter maintained in the complaint that she was entitled to both disability insurance benefits and supplemental security income payments. In May

2011, United States Magistrate Judge H. David Young remanded this case pursuant to "sentence six" of 42 U.S.C. 405(g). He did so for the following reasons:

> The Court takes no position on the correctness of the ALJ's decision. Instead, this case is remanded so that the ALJ can consider the results of the January 8, 2010, MRI. The ALJ shall consider the results in evaluating [Dr. Jo Anne] Gregory's findings and, in turn, assessing Potter's residual functional capacity. In addition, the ALJ shall clarify the confusion surrounding the granting of Potter's oral motion to amend the onset date.

See Pleading 18 at 428.[1]

The case was then returned to the Appeals Council. In July 2011, the Appeals Council entered an order that provided, in part, "... the Appeals Council vacates the final decision of the Commissioner and remands this case to an [ALJ] for further proceedings consistent with the order of the court." See Pleading 18 at 437. In December 2011, ALJ Raymond Malloy ("Malloy") conducted an administrative hearing, at the commencement of which he had the following discussion with Potter's attorney:

> ALJ: [Counsel], why don't you give us a little bit of background. This is a court remand case.
> ATTY: Yes, sir.
>
> ALJ: The way I read the court remand is there was a partial–partially favorable decision issued in this case; is that right?
>
> ATTY: That is correct, Judge. What's interesting about the decision is that it found Ms. Lunsford Potter disabled about four months after her date last insured. So, therefore, it was only a favorable SSI Title 16 portion–
>
> ALJ: Right.

---

[1]In a footnote accompanying the above quoted portion of Judge Young's opinion, he noted that Potter's request to amend her onset date to May 23, 2006, had been granted, but the ALJ found in his decision that Potter was alleging she began disabled for purposes of the Act on November 1, 2002.

ATTY: –of the decision. At the time, she was married and living with her husband. Now, they have since separated, but at the time it essentially meant no benefits for her because of his–because of his income.

But the bottom line is is that we–at the Appeals Council level, we obtained some evidence. You know, normally it's not the best time to get clarification, but because the judge didn't find her disabled [farther] back than he did, we asked her doctor to clarify some issues. And we submitted an MRI and–and a reference from her treating doctor to the Appeals Council that she had a, what was called a Tarlov cyst that could be–could explain the back–the lumbar problems she had been having.

The federal court felt like that someone else should be able to take a look at that because the Appeals Council did not address it or include it in the record when we filed in federal court.

So it has been uploaded now as part of this record, in addition to–you know, I would like to point out that we've submitted, you know, records from numerous specialists that her condition has done nothing but grow dramatically worse since that time. But we're still here today, essentially, to raise the issue of an earlier onset date; early enough to get her her disability benefits.

And that's essentially the crux of the issue here today is whether she was disabled prior to the time that the last law judge found her disabled.

ALJ: That didn't work because he found that it was after the DOI; is that right?

ATTY: That's right. It was about four months. He found that–I believe it's April, and her date last insured had been in December. I have a copy of the decision here.

ALJ: Well, what did the Appeals Council do about that?

ATTY: The Appeals Council just–just didn't–didn't make any reference to it. Even though we submitted additional evidence, the Appeals Council didn't even acknowledge receiving, and we, of course, had the proof that they had received it. And then when they filed the transcript in federal court, they didn't–apparently, did not acknowledge receiving it. So the federal court felt like that the Appeals Council should have considered the additional evidence. And so when they did not, they sent it back for further consideration of the additional evidence.

-3-

The Appeals Council didn't-what's interesting is that the Appeals Council vacated the entire decision for purposes of-of your consideration here today. Now, of course, to some extent, I question that; whether they should have vacated the entire decision. It seems to me that it would have been more appropriate to only vacate the part of the decision with respect to the Title 2 application. However, that's not what they did. And so we are–

ALJ: That's right. That's the way I read it, too. They vacated my decision completely, didn't they?

ATTY: Yes. It wasn't your decision. It was another law judge. It was–

ALJ: Oh. I'm glad to hear that.

ATTY: Yes. It wasn't you, Judge. It was a judge-it was one of these Arkansas judges. It wasn't you.

ALJ: Okay. What's the status of the SSI?

ATTY: She has continued to receive her SSI once she got financially eligible. You know, her husband-she and her husband separated, and that allowed her to get some benefits, of course, you know, but–

ALJ: So she is on the SSI now?

ATTY: That was-she was put into pay status after that favorable decision, and that's continued.

ALJ: Okay. Do you know when she went on SSI?

ATTY: I do. It was April of 2010.

...

ALJ: Well, did she file a subsequent SSI application?

ATTY: No, she did not. She-we went-we went to a hearing before an administrative law judge on her Title 16 and Title 2 app. He found favorably with respect to the Title 16 but not far enough back for the Title 2.

We appealed that portion to the Appeals Council, and then when the

Appeals Council, sort of, rubber stamped that, despite the additional evidence, the federal court remanded it for further consideration. And then the Appeals Council vacated the entire decision of the ALJ. Once again, I don't think that was necessary, but they did.

ALJ: Well, that means that–well, okay. Then they–by vacating the decision, then the SSI [is] gone.

ATTY: Every–well, it's–I don't know that–it hasn't left–they haven't stopped paying her yet, but that means that is before you here today, all of it–I assume that all of it's before you here today.

ALJ: I think it is too, yeah.

<u>See</u> Pleading 18 at 376-380. During the hearing before ALJ Malloy, the question of Potter's onset date arose. ALJ Malloy asked Potter's attorney if Potter were still alleging an onset date of November 1, 2002. Potter's attorney represented, and ALJ Malloy recognized, that Potter's onset date had been amended to May 23, 2006. Counsel then stated the following:

ATTY: ... the purpose–the entire purpose of us appealing the case the first time–normally, we wouldn't even consider necessarily appealing a partially favorable decision, it's just that, you know, we were within four months of her date last insured, which was December 31st of 2008. And that's been a tremendous liability to Ms. Potter not getting found disabled prior to then. So, you know, that is the amended onset date, but we will be happy, content, with any date that's prior to December 31st of 2008, depending on what the medical records and the medical expert say.

<u>See</u> Pleading 18 at 388. In March 2012, ALJ Malloy issued a decision adverse to Potter. He found that she was not disabled for purposes of the Act at any time between November 2002, <u>i.e.</u>, her original onset date, and the date of his decision. He therefore denied her applications for disability insurance benefits and supplemental security income payments, this despite the fact that she had been receiving supplemental

security income payments since April 2010 as a result of ALJ Knowles' decision. Potter appealed ALJ Malloy's decision. The Appeals denied her request for review, and ALJ Malloy's decision became the Commissioner's final decision.

In December 2013, the Commissioner filed a motion to vacate Judge Young's order remanding this case pursuant to "sentence six." See Pleading 16. In the same motion, the Commissioner asked that this case be re-instated so that it could "resume before this Court." See Pleading 16 at 1. The Commissioner maintained in the motion that the administrative proceedings ordered by Judge Young had been completed, and the case was ready to resume. Judge Young granted the motion in January 2014, the remand order was vacated, and the parties were ordered to file briefs. They have now filed their briefs.

Potter maintains that ALJ Malloy's findings are not supported by substantial evidence on the record as a whole and offers several reasons why.[2] She first maintains that he erroneously found she was alleging disability as of November 1, 2002, when she had amended her onset date to May 23, 2006.

ALJ Malloy erred when he found that Potter was alleging disability since November 1, 2002. His error, though, is harmless as she has failed to show that the error had an impact on the outcome of this case. The November 1, 2002, date predated the amended onset date of May 23, 2006, and ALJ Malloy appears to have considered all of the

---

[2]The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

evidence from November 1, 2002, through the date of his decision. Moreover, Potter's attorney noted during the hearing that he would be "happy, content, with any date that's prior to December 31st of 2008, depending on what the medical records and the medical expert say." The November 1, 2002, date is clearly prior to December 31, 2008, and Potter has failed to explain what was meant by counsel's qualifying remark.

Potter offers a second reason why ALJ Malloy's findings are not supported by substantial evidence on the record as a whole. She maintains that his finding that she was not disabled for purposes of the Act at any time between November 1, 2002, and the date of his decision is contrary to ALJ's Knowles' finding that Potter was disabled for purposes of the Act as of April 16, 2009.

ALJ Malloy's decision is contrary in some respects to ALJ Knowles' decision. Their conflicting decisions, though, do not warrant disturbing ALJ Malloy's decision. The Appeals Council's action in re-opening this case does not appear to be inconsistent with Judge Young's remand order as he took no position on the correctness of ALJ Knowles' decision. The Appeals Council's action also does not appear to be unreasonable or entirely unforeseeable. The Appeals Council could do as it did. During the hearing before ALJ Malloy, Potter's attorney acknowledged that the Appeals Council had vacated ALJ Knowles' decision, and ALJ Malloy agreed with that interpretation of the Appeals Council's action. They then proceeded with the hearing with the understanding that a new determination was being made on Potter's entitlement to disability insurance benefits and supplemental security income payments. ALJ Malloy was not bound by ALJ Knowles' decision, and ALJ Malloy could review Potter's claim de novo.

Potter offers a third reason why ALJ Malloy's findings are not supported by substantial evidence on the record as a whole. She maintains that he accorded too little weight to the findings of Jo Anne Gregory, M.D., ("Gregory"), a treating physician, and accorded too much weight to the testimony of Charles Murphy, M.D., ("Murphy"), a non-treating, non-examining physician.

A treating physician's medical opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted). The ALJ may discount or even disregard a treating physician's opinions if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of his opinion." See Id. (internal quotations omitted).

Gregory opined in a March 2009 medical source statement that Potter can, inter alia, occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk less than two hours in an eight-hour workday with normal breaks; sit for two hours in an eight-hour workday with normal breaks; and only occasionally do such things as reach, handle, finger, and feel. See Pleading 8 at 333-336. Gregory also noted in the medical source statement that Potter has "peripheral neuropathy with persistent pain in [her] upper and lower extremities [and] ... has been diagnosed with fibromyalgia ..." See Pleading 8 at 334. In a June 2010 letter, Gregory noted that the results of an MRI indicated a Tarlov cyst and would explain the cause of

Potter's low back pain. See Pleading 18 at 485. Although ALJ Malloy credited Gregory's assessment of Potter's ability to lift and carry weight, ALJ Malloy found no objective basis for Gregory's assessment of Potter's ability to stand and/or walk; sit; and reach, handle, finger, and feel. ALJ Malloy also discounted Gregory's observation of a Tarlov cyst, noting that the record did not conclusively establish the existence of such a cyst. ALJ Malloy gave "great weight" to Murphy's testimony during the hearing, testimony in which he opined, inter alia, that Potter can sit for six hours in an eight-hour workday and testimony the ALJ relied upon in finding that Potter can perform sedentary work.

ALJ Malloy's decision to discount Gregory's finding is not something the Court takes lightly as a treating physician is more familiar with a claimant's medical condition than are other physicians. See Thomas v. Sullivan, 928 F.2d 255 (8th Cir. 1991). In this instance, though, substantial evidence on the record as a whole supports ALJ Malloy's decision to discount Gregory's assessment of Potter's ability to sit.

ALJ Malloy could discount Gregory's assessment of Potter's ability to sit because the assessment is not consistent with Gregory's own treatment records. It appears that Gregory began seeing Potter in 2002 for her complaints of back pain. See Pleading 8 at 295. At that time, Gregory noted tightness and tenderness in Potter's lumbar region and assessed a lumbar sprain. It appears that Gregory did not see Potter again until 2008 when she presented complaining of pain, primarily in her back. See Pleading 8 at 298. Gregory diagnosed joint pain and peripheral neuropathy. Gregory continued to see Potter throughout 2008 and 2009. See Pleading 8 at 292-294, 323-331. The Court has reviewed Gregory's progress notes from those visits and finds that ALJ Malloy made an acceptable

characterization of Gregory's findings, a characterization that was as follows:

> ... Gregory's own treating notes only rarely mention any musculoskeletal abnormalities, particularly with relation to [Potter's] back. The most common findings in the record are paraspinal tenderness in the lumbar and cervical spines with occasional tenderness in the left shoulder. [Gregory] has also noted some muscle spasms in [Potter's] back and neck as well. However, there are only rare occasions where [Gregory] discusses any limitation in [Potter's] range of motion. There are no neurological deficits found in the records to support the severe limitations found by .. Gregory with regard to the claimant's standing and walking.

See Pleading 18 at 365. Gregory repeatedly diagnosed, inter alia, degenerative disc disease and fibromyalgia, see Pleading 8 at 292-293, 327, 329-331, but the findings supporting the latter diagnosis are minimal. Moreover, a fair characterization of her treatment of those impairments is that it was conservative.

Gregory represented in an April 2010 letter that a January 2010 MRI of Potter's back revealed a Tarlov cyst. See Pleading 18 at 485. Gregory represented that the cyst "had not been seen prior in studies with CT's and plain film x-rays" and would explain Potter's severe back pain. See Pleading 18 at 485. ALJ Malloy could and did discount Gregory's interpret of the MRI for at least two reasons. First, the results of the MRI actually revealed the following: "The patient appears to have a Tarlov cyst at the S2 level." See Pleading 18 at 484. Thus, rather than conclusively establish the existence of the cyst, the results of the MRI revealed a possible cyst. Second, the record contains the results of two other MRIs of Potter's back, one in February 2008 and a second in January 2010. See Pleading 18 at 307-308, 488-489, 492-493. Evidence of a cyst was not noted in either MRI.

ALJ Malloy could also discount Gregory's assessment of Potter's ability to sit

because the assessment is inconsistent with other evidence in the record. For instance,
Amir Qureshi, M.D., ("Qureshi") examined Potter on four occasions between August 2011
and November 2011. See Pleading 18 at 503-505, 509-511, 512-514, 516-518. During his
November 2011 examination, he offered the following observations of Potter's lumbar
spine:

> ... Inspection of the lumbar spine reveals no scoliosis. Palpation of the
> lumbar facet reveals tenderness on both ... sides at L3-S1 region. There is
> no pain noted over the lumbar intervertebral spaces (disc) on palpation.
> **Palpation of the bilateral sacroiliac joint area reveals right and left sided
> pain**. Palpation of the greater trochanteric bursa on both sides reveals no
> tenderness. **Anterior flexion of lumbar spine is noted to be 50 degrees**.
> Anterior lumbar flexion causes pain. Extension of lumbar spine is noted to
> be full at 30 degrees. There is pain noted with lumbar extension.

See Pleading 18 at 504. [Emphasis in original]. Qureshi also observed "palpable trigger
points" in Potter's lower back muscles. See Pleading 18 at 504. He nevertheless observed
that her gait appeared to be normal; she was able to do "heel walk" and "toe walk;" and
she had a normal motor strength in all of her extremities, including her left and right
upper extremities. See Pleading 18 at 504.

Potter maintains that ALJ Malloy gave undue weight to Murphy's testimony
because he was a non-treating, non-examining physician. The Court agrees that ALJ
Malloy accorded Murphy's testimony too much weight as he offered an opinion of
Potter's work-related abilities without ever examining her. ALJ Malloy's error, though,
is harmless because Murphy's testimony is nevertheless supported by other evidence in
the record.

The record reflects that Murphy testified during the hearing before ALJ Malloy.

See Pleading 18 at 401-410. Unlike the typical non-treating, non-examining physician, Murphy was subject to cross-examination by Potter's attorney. The focus of counsel's cross-examination was the extent to which Potter was experiencing back pain and the extent to which it impaired her ability to perform work-related activities. Murphy testified that after reviewing the medical evidence and listening to Potter's testimony, she was capable of, inter alia, sitting for about six hours in an eight-hour workday. His testimony is supported by other evidence in the record. For instance, Murphy's testimony is consistent with the findings made by Qureshi. Murphy's testimony is also consistent with the results of a June 2011 MRI. The results indicated the following: "[m]ultilevel disc and facet degeneration resulting in mild right foraminal narrowing at L5-S1, mild right lateral recess stenosis at L5-S1, and mild right foraminal narrowing at L4-5. No other evidence of nerve root impingement or canal stenosis." See Pleading 493.

Potter offers a fourth reason why ALJ Malloy's findings are not supported by substantial evidence on the record as a whole. She maintains that he improperly discounted the restrictions assigned to her by Jerry Hodges, M.D. ("Hodges"). Potter maintains that ALJ Malloy discounted the restrictions assigned by Hodges because there were no "treatment records in the evidence of ... Hodges ever seeing [Potter]," see Pleading 18 at 366, when in fact Hodges had seen Potter on several occasions.

In a September 2011 report, Hodges offered an assessment of Potter's work-related abilities. See Pleading 18 at 502. He noted that her "lumbar scoliosis and stenosis is as bad as I have ever seen. Her pain is unrelenting." See Pleading 18 at 502. He opined that because of her impairments, primarily her back impairments, she could not sit or

stand for more than thirty minutes at a time, walk more than one hundred feet, or lift

more than ten pounds. ALJ Malloy accorded no weight to Hodges' assessment for the

following reasons:

> ... The primary reasons for this is that there are no treatment records in
> the evidence of ... Hodges ever seeing [Potter]; he has not indicted in his
> form whether he has ever treated [her] or for how long if he has treated
> her; there is no indication from the form whether ... Hodges ever
> examined [her]; there is no indication from the form whether [he] ever
> examined any of her objective medical records prior to formulating the
> opinion; and the form includes proposed diagnoses that are never seen in
> her medical records and not supported by the objective medical evidence.
> ... Given that ... Hodges' relationship with [Potter] is indeterminable and
> that his opinion largely conflicts with the objective medical evidence,
> including the diagnostic findings, the undersigned finds that his opinion
> provides no probative value to this determination. ...

See Pleading 18 at 366.

The Commissioner concedes, and the Court finds, that ALJ Malloy erred when he

observed that there were no records of Hodges ever seeing Potter. Clearly, Hodges saw

Potter between at least August 2011 and October 2011. See Pleading 18 at 541-542, 545-

546. ALJ Malloy's error, though, is harmless as there were other reasons he could and did

discount Hodges' assessment of Potter's work-related abilities.

ALJ Malloy discounted Hodges' assessment because it is inconsistent with his own

treating records. Although Hodges diagnosed Potter with spinal stenosis in August 2011

and again in September 2011, see Pleading 18 at 545-546, he made no mention of her

back pain when he saw her again in October 2011 for complaints not related to her back

pain, see Pleading 18 at 541-542. Moreover, his progress notes do not contain findings

consistent with his assertion of disabling back pain and offer little support for his

observations that her "lumbar scoliosis and stenosis is as bad as [he has] ever seen" and "her pain is unrelenting." With regard to the former observation, it is not a medical finding, and his notation that "her pain is unrelenting" appears to have been made on the basis of her self-reports rather than the objective medical evidence.

ALJ Malloy could also discount Hodges' assessment because it is inconsistent with other evidence in the record. For instance, Hodges' assessment is inconsistent with the findings made by Qureshi, as well as the results of the June 2011 MRI.

Potter offers a fifth reason why ALJ Malloy's findings are not supported by substantial evidence on the record as a whole. She so maintains as follows:

> ... [At] page 346 of the transcript, ... [Potter's] prior attorney provided evidence to the Appeals Council indicating that portions of [Potter's] exhibits submitted on December 7, 2011, and November 29, 2011, were not included as part of the record. These records were specifically discussed at the time of the hearing as reflected on pages 381 and 382 of the transcript. Specific references were made to the 39 pages and some recent Exhibits which were submitted immediately prior to the hearing. Although one cannot tell for sure, but it appears that maybe these records were hand delivered to the ALJ at the hearing in addition to being scanned in. It appears that the records scanned in did not contain all of the record from ... Hodges. This conclusion is derived in reviewing Exhibit 27F which is the only Exhibit received on December 7, 2011, which only contains 28 pages rather than the 39 pages which were actually scanned in. It also appears that there are 20 pages missing from Dr. Russell Allison which were scanned in by [Potter's] previous attorney on November 29, 2011, which do not appear in the record. It also appears based upon the language contained in the Appeals Council's October 18, 2013, decision that the Appeals Council "received and considered additional medical evidence from Dr. Russell Allison in arriving at [its] decision." However, [Potter's] counsel has reviewed the documents provided to him on the disc which is represented as the record in this case, but does not find the records referred to which were considered. ...

See Pleading 12 at 4-5.

The record reflects that before ALJ Malloy began the hearing, he noted that he was in possession of Exhibits 1-F through 25-F. See Pleading 18 at 380. Potter's attorney represented that he desired to introduce an additional exhibit consisting of eleven pages of "test results" and twenty-eight pages "from the doctor," or "about a total of [thirty-nine] pages." See Pleading 18 at 382. The Commissioner submits, and the Court finds, that the eleven pages of "test results" were introduced into the record, and now appear, as Exhibit 26-F. See Pleading 18 at 530-540. The Commissioner also submits, and the Court finds, that the twenty-eight pages "from the doctor" were introduced into the record, and now appear, as Exhibit 27-F. See Pleading 18 at 541-568. There is nothing to suggest that Exhibits 26-F or 27-F were not considered by ALJ Malloy or the Appeals Council.

The Commissioner concedes, and the Court finds, that until recently, the record did not contain the twenty pages of medical records from Russell Allison, M.D., ("Allison"). Although the Appeals Council specifically considered the records in reviewing Potter's claim, see Pleading 18 at 338, the medical records were not included in the record until the Commissioner filed a supplemental transcript in June 2014. See Pleading 29. Like the Commissioner, the Court is not persuaded that the records warrant disturbing ALJ Malloy's findings.

Exhibit 27 reflects that Allison saw Potter on several occasions between September 2010 and October 2011 for pain in her lower extremities, primarily in her knees. See Pleading 29 at 570-589. Although she complained of pain and had previously undergone surgery on her right knee, he observed that by October 2011 she had a full

range of motion in her right knee. <u>See</u> Pleading 29 at 571. With respect to her left knee, he noted only "mild degenerative disc disease." <u>See</u> Pleading 29 at 572.

The Court recognizes that this case presents an unusual situation. ALJ Knowles found Potter disabled for purposes of the Act as of April 16, 2009, but ALJ Malloy found that Potter was not disabled for purposes of the Act at any time through the date of his decision. As unusual a situation as this might be, the Court finds that ALJ Malloy could find as he did because substantial evidence on the record as a whole supports his findings. Accordingly, Potter's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 6th day of May, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE